### THE PEOPLE v. EDWIN R. MOORMAN.

*Druggists—Regulation—Constitutional law—Physicians.*

1. A physician cannot claim to have any vested right to compound or sell drugs and medicines to one not his patient, contrary to Act No. 134, Laws of 1885, entitled "An act to

| 86 | 433 |
| 127 | 88 |
| 86 | 433 |
| s49nw | 263 |
| 131 | 1257 |

regulate the practice of pharmacy in the State of Michigan."

2. Sections 6 and 7 of said act do not authorize the pharmacy board to fix the license fees arbitrarily, but the same must be uniform, and apply to all persons of each of the designated classes alike.

3. Whether the provisions of Act No. 196, Laws of 1887, limiting the exemption of retail dealers of patent and proprietary medicines from the operation of the pharmacy act, as contained in the original act, to dealers of three years' standing or more, is constitutional, *query;* but, if not, the remainder of the act would not be invalidated, and the law of 1885 would remain in force.

Exceptions before judgment from Ionia. (Smith, J.) Argued June 17, 1891. Decided July 3, 1891.

Respondent was convicted of a violation of the pharmacy law. Conviction affirmed, and the circuit court directed to proceed to judgment on the verdict. The facts are stated in the opinion.

*John C. Dooling* and *F. C. Miller,* for respondent.

*A. A. Ellis,* Attorney General, for the people.

MORSE, J. October 30, 1890, at the village of Belding, in Ionia county, James H. Kinnane, employed by the State Board of Pharmacy to prosecute violations of the pharmacy law, went into the drug-store of Spencer Bros., and asked for a half ounce of aloes and myrrh, which was furnished him by the respondent. Neither of the Spencer Bros. was present, nor was a registered pharmacist or a registered assistant pharmacist in the store, at the time this tincture was put up. A short time afterwards, and on the same day, Kinnane again went into the store, and called for an ounce of tincture of iodine and one ounce of carbolic acid, the same being, in the language of the record, "drugs, medicines, and

poisons." The tinctures were put up for him by the respondent. Kinnane afterwards saw respondent, and asked him if he was a registered pharmacist or registered assistant, and he said he was not; that he was a practicing physician, and registered as such, and considered that he had a right to dispense such drugs without being registered as a pharmacist, and that the laws of Michigan would protect him in so doing. The court refused to direct a verdict of not guilty on these facts, upon a trial of the respondent in the Ionia circuit court upon appeal from justice's court, where he was tried and convicted of violating the pharmacy law.

The respondent, Moorman, in his defense, admitted the facts above stated, and showed that he was a reputable physician of 3 years' practice, now registered in Ionia county; that he had 10 years' experience as a pharmacist years ago; that he sold the drugs without any willful intent to violate the law, but relying upon his right to do so because of being a registered physician; that Kinnane was not his patient, and he did not furnish him the drugs as a patient. He testified that any reputable physician should be able, and is able, to compound medicines and poisons, and prepare his own prescriptions and the prescriptions of any other physician, and that the sale of patent medicines is no part of the business of a practicing pharmacist. In this he was corroborated by the testimony of Henry Tremaine, a practicing physician for 15 years, residing at Ionia, who also testified that the tincture of iodine and carbolic acid are not used in coloring and in tanning. Charles Thompson, a registered pharmacist, residing at Ionia, testified that the sale of patent medicines was not necessarily any part of the business of a pharmacist; that any one who could read could sell them as well as a person who had three years' experience, or any other term of years; that pro-

prietary and patent medicines are usually kept in pharmacies. This is the substance of all the testimony.

The counsel for the respondent, at the close of the evidence, requested the court to direct a verdict of not guilty, on the ground that the law is unconstitutional and void. This request was refused, and the court instructed the jury that if they found that respondent sold the tincture of iodine and carbolic acid, and that the same were not used for coloring and tanning, then they should find a verdict of guilty. The jury returned a verdict of guilty, and the case comes here upon exceptions before judgment.

It is admitted by the counsel for the defendant, in his argument in this Court, that a law regulating the practice of pharmacy in this State is needed, and the right of the Legislature to pass such an act is not denied. The constitutionality of the present law is, however, attacked upon several grounds. We shall take them up in the order named in defendant's brief.

1. The law provides that no person shall vend patent or proprietary medicines by retail unless he has been in the business of vending and retailing such medicines three years or more. 3 How. Stat. § 2287c8, p. 3204. It is claimed that the selling of such medicines is not necessarily any part of the business of a pharmacist; that the confining of the sale of patent medicines to pharmacists and retail dealers of three years' experience grants a monopoly to a favored few, and for no adequate reason; and that it is also an object in the law not embraced in the title, which reads "An act to regulate the practice of pharmacy in the State of Michigan." See *State v. Donaldson*, 41 Minn. 74 (42 N. W. Rep. 781).

There is much force in both of these objections to this provision of the law; but it is not shown that the respondent was charged with vending patent or proprietary

medicines, or that the drugs sold by him were such medicines. If this provision were eliminated from the act, it would have no effect whatever upon the conviction of the respondent, as the remainder of the act would not be invalidated thereby. Under the law as originally enacted, in 1885, the sale of patent and proprietary medicines was expressly excepted from the act. In 1887 the law was amended so as to exempt only those retail dealers in these medicines who had sold them for three years or more. If this amendment should be declared unconstitutional, it would leave the law of 1885 in force.

2. It is claimed that the law authorizes the pharmacy board to fix the license fees arbitrarily, and to make a distinction, in their discretion, between different individuals. We do not think the act is open to this objection. It is provided by section six of the act (3 How. Stat. § 2287c4) that—

" The said board may grant, under such rules and regulations as it may deem proper, at a fee not exceeding one dollar, the certificate of registered assistant to clerks or assistants in pharmacy not less than 18 years of age."

Section 7 of the act provides for a yearly fee to be paid said board, which shall not exceed one dollar for a pharmacist and fifty cents for an assistant, such registration fee to be fixed by the board. Neither of these sections contemplates that the board may charge one person one cent, and another one dollar, as contended by respondent's counsel. The fee must be uniform, applying to all persons of each class alike; and there is no evidence in the record that the practice of the board has been otherwise.

3. The main objection to the act, and the only one which in this case concerns the respondent, is that the law deprives a registered physician of the right to compound, put up, and sell drugs and medicines, which it

must be considered from the nature of his profession he is thoroughly competent to do. It is also claimed that he has a vested right to do this, which the Legislature cannot destroy.

So much of the act as applies to physicians reads as follows:

"Nothing in this act shall apply to or in any manner interfere with the business of any practicing physician *who does not keep open shop for the retailing, dispensing, or compounding of medicines and poisons,* or prevent him from supplying to his patients such articles as may seem to him proper." Section 10, Act No. 134, Laws of 1885; 3 How. Stat. § 2287c8, p. 3204.

Under this act, if a physician wishes to keep open shop, or, in other words, a drug-store, he must come under the same regulations as other persons; and he has no more right than any other person to step into a drug-store, and to compound or sell drugs, medicines, or poisons to one not his patient. It may be that he is as competent to do this as a registered pharmacist or his registered assistant, but he has no vested right to do so. The law, as I understand it, does not interfere with him in the legitimate practice of his profession, in which he is registered. If he wishes to do more than this, he must comply with all the reasonable regulations of the pharmacy act.

The right to regulate the practice of pharmacy, certainly, rests upon as good reason and as sound principle as the right to regulate the practice of medicine. This latter right was sustained by this Court in *People v. Phippin,* 70 Mich. 6, and in that case a law was upheld which must be said in its provisions to be much more arbitrary and unreasonable than the one now before us. And in that case it was substantially held that no person, no matter how long he had been in the practice of his

profession, had a vested right to practice medicine in Michigan. Consequently, a physician, having no right to practice his own profession in this State unless registered, and conforming to the regulations prescribed by the Legislature, cannot claim to have any vested right to compound or sell drugs and medicines to one not his patient, contrary to the will of the same body. This must be now considered the settled law of this State. The question of the wisdom of such legislation is now relegated to the people; the courts have no concern with it.

It is also claimed that the law is unconstitutional because it prohibits an assistant pharmacist, though registered, from owning or carrying on a drug-store on his own account, or from managing a pharmacy. This is also a provision that does not concern the respondent in this case, and one which, if unconstitutional, would not destroy the balance of the act. It is not necessary, therefore, to express any opinion as to the validity of this prohibition.

The verdict of the jury must be sustained, and the circuit court of Ionia county is directed to proceed to judgment upon such verdict.

The other Justices concurred.