TEMPLAR *v.* STATE BOARD OF EXAMINERS OF BARBERS.

CONSTITUTIONAL LAW—BARBERS' LICENSE—EQUAL PROTECTION OF LAWS.

> The provision of section 5 of the barbers' license law (Act No. 212, Pub. Acts 1899), that no alien shall be entitled to a certificate, is repugnant to the fourteenth amendment to the Federal Constitution, as denying the equal protection of the laws.

*Mandamus* by Arthur G. Templar to compel the State board of examiners of barbers to permit him to take the examination provided for by law. Submitted June 3, 1902. (Calendar No. 19,311.) Writ granted June 24, 1902.

*Frank E. Doremus,* for relator.

*Horace M. Oren,* Attorney General ( *Charles W. McGill,* of counsel), for respondent.

MONTGOMERY, J.   Act No. 212 of the Public Acts of 1899 provides for the examination and licensing of barbers. Section 5 provides for the examination of an applicant concerning his ability to prepare and fit for use tools and utensils used by barbers, including the proper antiseptic treatment of razors, etc., and the nature and effect of eruptive and other diseases of the skin and scalp, and whether the same are infectious or communicable, and provides that no person so examined shall receive a certificate of the said board unless he shall appear to be skilled in the use of barbers' tools, and possessed of knowledge sufficient to prevent the spread, by means of barbers' tools and appliances, of eruptive and other diseases of the skin and scalp, and further provides that no person so examined shall receive such certificate who at the time of such examination is an alien.   The relator applied to the respondent board to take the examination required by law, setting up that he is a resident of the city of Detroit; that he was born in Canada, and follows the trade of a barber as a means of livelihood; and that he has declared his intention of becoming a citizen of the United States.   The board refused to receive the application upon the ground that he was an alien. The question presented is whether the provision of the act which requires an applicant to be a citizen of the United States is valid.   The relator contends that this provision is invalid, for the reason that it violates the provisions of the fourteenth amendment of the Constitution of the United States, which declares that no State shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

In *Barbier* v. *Connolly,* 113 U. S. 27, 31 (5 Sup. Ct. 357), Mr. Justice Field said:

" The fourteenth amendment, in declaring that no State 'shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property."

In *Re Grice*, 79 Fed. 645, it was said:

"By 'equal protection of the laws' is meant equal security under them to every one, under similar terms, in his life, his liberty, his property, and in the pursuit of happiness.    It not only implies the right of each to resort, on the same terms with others, to the courts of the country for the security of his person and property, the prevention and redress of wrongs, and the enforcement of contracts, but also his exemption from any greater burdens and charges than such as are equally imposed upon all others under like circumstances."

In Pennsylvania a statute imposing upon the employers of alien labor a tax of three cents per day for each of such laborers so employed was held unconstitutional, in that it deprived the laborers of the equal protection of the laws, in violation of the fourteenth amendment.  See *Fraser* v. *McConway & Torley Co.*, 82 Fed. 257.

So in New York a statute made it a crime for alien laborers to be employed on public works by a contractor who was constructing them under a contract with a municipal corporation.   This statute was held to violate the fourteenth amendment of the Constitution, in *People* v. *Warren*, 34 N. Y. Supp. 942.

Speaking generally, Mr. Tiedeman, in his work on State and Federal Control of Persons and Property, at page 331, says:

"States have, by legislation, undertaken to protect native labor against alien labor; but in each case the legislation has been declared to be an invasion of the jurisdic-

tion of the United States government, and an unconstitutional interference with the rights of resident aliens."

The attorney general contends that, under the police power, the legislature may regulate callings, trades, and professions, and that it is not for the courts to pass upon the wisdom of their regulations, and that, if such regulations result in excluding aliens from the privileges which citizens enjoy, it still should be held within the power of the legislature. Attention is directed to the cases of *People* v. *Moorman*, 86 Mich. 433 (49 N. W. 263), *People* v. *Phippin*, 70 Mich. 6 (37 N. W. 888), and *Metcalfe* v. *State Board of Registration in Medicine*, 123 Mich. 661 (82 N. W. 512). The language in *People* v. *Moorman* is cited as sustaining the position of the attorney general. Mr. Justice Morse, referring to the case of *People* v. *Phippin*, declares in *People* v. *Moorman* that "in that case it was substantially held that no person, no matter how long he had been in the practice of his profession, had a vested right to practice medicine in Michigan." We do not hesitate to reiterate that doctrine. We think it must be considered as settled that, in the protection of the public health, the legislature has the right to provide for an examination of all persons who seek to engage in the practice of medicine, and to have their qualifications passed upon by a properly constituted board. But the practice of medicine is no more an incident of citizenship than the practice of the trade of a barber. *All persons* are entitled to enjoy the equal protection of the law, and while it may be competent for the legislature, in the exercise of its police powers, to provide for an examination and licensing of barbers, as was held in *State* v. *Zeno*, 79 Minn. 80 (81 N. W. 748, 48 L. R. A. 88, 79 Am. St. Rep. 422), and *Ex parte Lucas*, 160 Mo. 218 (61 S. W. 218), would it be contended that the legislature might provide that only white persons should be licensed? The learned attorney general, in his brief, makes this statement of the true rule:

"When legislation applies to particular bodies or associations, imposing upon them additional liabilities and

restrictions, under the police power of the State, which are not purely arbitrary, the law does not violate the equal protection clause of section 1 of the fourteenth amendment to the Federal Constitution, if all persons brought under its influence are treated alike under the same conditions and circumstances."

We discover nothing faulty in this statement of the rule. But the difficulty with this enactment is that all persons brought under the influence of this legislation are not treated alike under the same conditions and circumstances. Before the enactment of this statute the relator had the undoubted right to ply his trade in Michigan. In the exercise of the police power, the legislature had the undoubted right to require, as a prerequisite to his plying his trade, that he submit to an examination. But had it the right to require citizenship? If it had the right to couple that with *other* requirements, it would have the same right to make that the *only* requirement. In other words, it would have the right to exclude alien labor wholly. We think the cases cited demonstrate that it had not this power.

A very different question is presented than in a case of the requirements for admission to the bar, for example, as in such case the statute confers upon the applicant who is admitted to the profession an office. He becomes an officer of the court. So, too, a different question is presented than was before the court in *Trageser* v. *Gray*, 73 Md. 250 (20 Atl. 905, 9 L. R. A. 780, 25 Am. St. Rep. 587),—a case much relied upon by the attorney general. In that case the question presented was whether aliens could be excluded from engaging in the business of retailing liquors. This is a business peculiar to itself, which might be wholly prohibited by the legislature, and licenses might be confined to a limited number. We need not, therefore, inquire whether such legislation is an infraction of the rights of the individual not a citizen. But in the present case the relator's business is in no way injurious to the morals, the health, or even the convenience of the community, provided only he has the requisite knowledge

upon the subjects prescribed by the legislature to practice his calling without endangering the health of his patrons. To hold that he is not entitled to practice this calling because not a full citizen of the United States is to deny to him rights which we think are preserved by the fourteenth amendment.

It is not contended that the elimination of this provision will defeat the purposes of the law wholly, but it is very properly assumed by both sides that the statute may still be operative with this provision eliminated, if otherwise valid.

The writ of *mandamus* will issue as prayed.

HOOKER, C. J., MOORE and GRANT, JJ., concurred. LONG, J., did not sit.