Johnson, J.
The law whose validity is challenged is now included in Sections 6083 and 13219, General Code.
In addition to the statement required by the statute providing for a tax on the business of trafficking in intoxicating liquors, it is now further provided that the person conducting the business shall answer certain questions.
1. Are you, or if a firm, is any member of your firm an alien or an unnaturalized resident of the United States?
2. Have you, or any member of your firm or any officer of your corporation, ever been convicted of a felony?
3. Have you, within the past twelve months, knowingly permitted gambling to be carried on in, upon or in connection with your place of business?
*259 4. Have intoxicating liquors been sold at your place of business to minors, except on the written order of their parents, guardians or family physician, or to persons intoxicated or in the habit of getting intoxicated, within the past twelve months, with your knowledge?
5. Have you knowingly permitted improper females to visit your place of business within the past twelve months?
Section 13219 provides a penalty for false answers to those questions, and Section 13221 enacts that if the questions are answered in the affirmative and the person thereafter engages in the sale of such liquors he shall be fined, etc.
Plaintiff in error suggests three reasons why the law is invalid.
1. That it is in conflict with Section 18 of the Schedule of the Constitution of Ohio, because it is a license law.
2. That it is in conflict with Section 2 of Article I, Constitution of Ohio.
3. That it is in conflict with the Fourteenth Amendment to Constitution of the .United States.
The sole purpose of the enactment of the statute which is attacked is obvious. The desire of the legislature was to prevent the persons referred to in the questions from engaging in the traffic.
The original law touching the general subject, was passed in 1882, and that law as well as succeeding ones relating to the same subject, were thoroughly considered by this court, in a number of cases, beginning with State v. Hipp, 38 Ohio St., 206.
*260 The validity of the law in its form known as the Dow law, was finally upheld in the case of Adler v. Whitbeck, 44 Ohio St., 539, and we do not think it necessary or profitable at this late day, to engage in discussion as to whether the liquor tax laws of Ohio, are license laws, and, therefore denied validity by Section 18 of the Schedule.
It is, however, urged against the statute in question here that the necessary legal effect of the exclusion of the persons referred to, from the business, is to license those not included among those referred to, to engage in the business.
Of course, it is not contended that the legislature intended the statute to be a license law. Its manifest and sole purpose is to exclude certain persons from the business.
Section 18 of the Schedule of the Constitution of Ohio reads: “No license to traffic in intoxicating liquors shall hereafter be granted in this state, but the general assembly may by law provide against the evils resulting therefrom.”
We cannot give assent to the view that a statute which affirmatively prevents certain described persons from engaging in the business, thereby licenses those not within the description.
The term “license” is not one whose meaning is involved in uncertainty or doubt. The object of a license is to confer a right that does not exist without a license. It is a permission to do something which without the license would not be allowed. This definition is in substance that given in a number óf cases. Youngblood v. Sexton, 32 Mich., 406, Cooley, J.; Home Ins. Co. v. Augusta, *261 50 Ga., 530; State v. Hipp, 38 Ohio St., 206; 5 Words and Phrases, 4133. And Judge McIlvaine in State v. Frame, 39 Ohio St., 399, defines it: “A license is essentially the granting of a special privilege to one or more persons not enjoyed by citizens generally, or at least, not enjoyed by a class of citizens to which the licensee belongs. A common right is not the cr-eation of a license.”
We think the framers of the Constitution used the word with this 'view of its meaning. The language is “No license, * * * shall hereafter be granted.” It contemplates the license as an affirmative act. A positive actual grant, which shall secure to the grantee a specific, definite right, not a negative, undefined thing which may survive, or may be claimed to survive, after a process of exclusion of other things. A person cannot become a grantee by such a process.
The clause providing for no license in Schedule 18, must be read .and considered, in connection with the concluding clause of the section, “but the general assembly may by law provide against the evils resulting therefrom.”
The presence of this clause, following the no-license clause, would seem to indicate, that while the state was not willing to give such approval to the traffic, as would be implied by an affirmative grant of license, yet it recognized the existence of the business itself, and desired 'to clothe the general assembly with power to legislate concerning it.
An interesting recital of the state of the law on the general subject, and the popular conception of it, at the time of the adoption of the Constitution, *262 is contained in the brief of Judge West in the case of State v. Hipp, supra.
Acting under the regulatory clause of Section 18, the legislature has from time to time, passed many laws to provide against the evils, etc. Laws to prevent sale of liquor in a brothel, against its sale within a certain distance of the Soldiers’ Home, or near certain meetings, to prevent sale to an intoxicated person, and many similar laws.
It would be a strange process of reasoning, which should conclude, that the effect of such laws, would amount to a license of such part of the traffic as is not conducted in the manner condemned, although the laws were passed under the power given in the last clause of the same section of the Constitution which prohibits the license.
The court in State v. Frame, 39 Ohio St., 409, say: “We are inclined to think this clause was inserted for the purpose to repel an inference (from the. facts that no restraint was imposed on the traffic by the Constitution, and legislative restraint by license was inhibited) that the intention was, to withdraw the traffic from legislative control.”
While some of the statutes which have been passed under the regulatory clause, deny the right to conduct the business, to those who come within the prescribed class, and while those who do not come within that class, or who have not violated some provision of such laws, are suffered to engage in the business, yet such statutes do not by implication, grant a license to such persons, within the meaning of the term, as included in Section 18 of the Schedule.
*263 It is also contended by plaintiff in error, that the statute denies the equal protection of the laws, in violation of Section 2 of Article I, Constitution of Ohio, that, the act discriminates between persons engaged in the sale of intoxicating liquors, because only persons who are engaged in the business, when the assessor makes his rounds, are required to make the certificate, and answer the questions referred to.
This objection goes merely to the administrative part of the law. We suppose, that in no case, can the mere ministerial or administrative agency, provided by the terms of a statute, to secure its enforcement, be complete in its action and operation. Under Section 2, Article XII, of the Constitution it is required that all property shall be taxed by a uniform rule at its true value in money. But the laws passed under that section, necessarily fix a certain day, on which the amount and value of the property shall be assessed. After that day, property comes and goes, and in the course of the administration of the tax laws, some escapes taxation. But the law does not exempt it. It is simply not listed.
It is also seriously urged that the law under examination is invalid, because under it an alien cannot engage in the business referred to, and that this is in contravention of the Fourteenth Amendment to Constitution of United States.
The case of Yick Wo v. Hopkins, 118 U. S., 356, it is insisted rules legislation such as involved here. In that case, an ordinance of the city of San Francisco provided, that it should be unlawful for any person to engage in the laundry business, *264 without first obtaining consent of the board of supervisors. The court held that the Fourteenth Amendment of Constitution of United States, applies as well to aliens, as to citizens of the United States, and -that, a law which in its operation arbitrarily forbids aliens to engage in ordinary kinds of business, to earn a living, was unconstitutional and void. In that case, the exclusion was purely arbitrary, and on account of race hatred. There was no pretense that the discrimination was made in the exercise of the police power, which was justified by the peculiar character of the business.
In the Slaughter-House Cases, 16 Wall., 36, it was held that the state of Louisiana, in the exercise of its police power, might lawfully grant to a company, for a specific term, the exclusive privilege of maintaining slaughter houses in a certain defined district, including the city of New Orleans.
. It was recognized that while the business of a butcher is of great value and necessity, it is likely to endanger public health, under some circumstances, and was subject to regulation.
The state is necessarily invested with that which is called the police power, and which will be, and should be, put forth as an expression of the popular conception of the necessities of social and economic conditions. Under it may be done, and should be done, that which will best secure the peace, morals, health and safety of the community.
The supreme court of the United States has forcibly stated the duty of upholding state police regulations, when enacted in good faith. Noble State Bank v. Haskell, 219 U. S., 104; Mugler v. Kansas, 123 U. S., 623.
*265 It is not doubted that the state may classify persons, and objects, for the purpose of legislation, if the classification is based on proper and justifiable distinctions, considering the purpose of the law. The Fourteenth Amendment was not designed to prevent all exercis'e of judgment by a state legislature, of what the interests of the state require, nor to compel it to run all of its laws in the channels of general legislation. Bachtel v. Wilson, 204 U. S., 36; St. John v. New York, 201 U. S., 633.
In Brannon on Fourteenth Amendment, it is said, at page 324: “The amendment permits special legislation in all its varieties. Minneapolis & St. Louis R. R. Co. v. Herrick, 127 U. S., 210; Duncan v. Missouri, 152 U. S., 377. In other words, the state may distinguish, select and classify objects of legislation, and necessarily its power must have a wide range of discretion. Clear and hostile discrimination against particular persons and classes, especially such as are of unusual character, unknown to the practice of our government, might be obnoxious to the Constitution.”
In People, ex rel. Einsfeld, v. Murray, 149 N. Y., 367, the validity of a liquor tax statute (somewhat similar to the one involved here) was attacked, one of the grounds being that it was contrary to the Fourteenth Amendment to the Constitution of United States, but the court sustained the law, however, without giving special notice to that objection.
In Commonwealth v. Hana, 195 Mass., 262, it was held that a requirement that a license as hawker and peddler shall be granted only to a *266 person who is, or has declared his intention to become, a citizen of the United States, is constitutional and a reasonable exercise of the police power. The court say: “It is clear that a statute arbitrarily forbidding aliens to engage in ordinary kinds of business to earn their living would be unconstitutional and void. * * * The business of peddling furnishes such opportunity for the practice of fraud that it is a proper subject for legislative regulation. * * * If in the same interest the legislature deems it important that licenses shall be granted only to citizens of the United States, it can hardly be said that they have exceeded their constitutional right in passing a law to that effect.”
In Trageser v. Gray, 73 Md., 250, the law in question invested a board with power of granting licenses to sell liquors by retail only, to citizens of the United States of temperate habits and good moral character. The court held the law to be a valid exercise of the police power and not repugnant to the Fourteenth Amendment of the Constitution of United States.
Other cases in which these principles are declared are, Blair v. Kilpatrick, 40 Ind., 312; Templar v. Barbers’ Board of Examiners, 131 Mich., 258.
We do not think the statutes of Ohio, and of other states, which have barred aliens from the liquor traffic in the manner stated have arisen from a spirit of race hatred or inhospitality, or a purpose to deny the equal protection of our laws or equal opportunity under our institutions. But they are based on the belief, that an alien cannot be sufficiently acquainted with our institutions, and our *267 life to enable him to appreciate the relation of this particular business to our' entire social fabric. When he has become more familiar with the spirit of the American people and their laws and has become a citizen, he will easily and readily (in the conduct of the business) assist in the furtherance of the policy of the state.
The judgments of the courts below will for this reason be affirmed.

Judgment affirmed.

Davis, C. J., Spear, Shauck and O’Hara, JJ., concur.