## SILVER v. THE STATE.

1. Section 9 of the .act of 1915 (Acts 1915, Ex. Sess. p. 71), which provides that "if any person not a citizen of this. State shall take or catch any oysters, fish, shrimp, prawn, turtle, terrapin, or other crustacean from the salt waters of this State, in any manner whatsoever, for the purpose of selling, he shall be guilty of a misdemeanor," is not void on the ground that it seeks to make penal the "mere purpose" of a person, rather than making penal the overt act of catching, taking shrimp, prawn, etc., for the purpose of sale.

2. The section of the act just mentioned is not violative of art. 1, sec 4, par. 1, of the State constitution, which provides that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law," for the reason that the rights of persons in this State, other than citizens of this State, are fixed by sections 2170 and 2173 of the Civil Code of 1910.

3. Nor does section 9 of the act of 1915 offend art. 3, sec. 7, par. 17, of the constitution of the State, which provides that "No law or section of the Code shall be amended or repealed by mere reference to its title, or to the number of the section of the Code, but the amending or repealing act shall distinctly describe the law to be amended or repealed as well as the alteration to be made."

4. Section 9 of the act of 1915 is not in violation of art. 3, sec. 7, par. 8, of the constitution of the State, which provides that "No law or ordinance shall pass which refers to more than one subject-matter or contains matter different from what is expressed in the title thereof."

5. The evidence is ample to support the finding that the defendant caught and took shrimp and prawn from the salt waters of this State for the purpose of sale.

6. The judgment of the court finding the defendant guilty and imposing sentence upon him is not in violation of any treaty rights which the defendant, as a citizen of Portugal, may have by reason of a treaty between the United States and the Republic of Portugal as set out in the 6th division of this opinion.

(a) The State primarily owns the shrimp, prawn, etc., within the salt waters of the State, and may provide the manner in which the citizens of the State may take such shrimp, prawn, etc.

(b) An act of the legislature which prohibits any person not a citizen of this State from catching and taking shrimp, prawn, etc., for the purpose of selling them, is not a violation of any privilege or immunity of citizens of another State, or of a citizen of the Republic of Portugal, either under the constitution of the United States or of the State of Georgia, or the treaty between the United States and the Republic of Portugal.

No. 52.    JULY 11, 1917.

Accusation of misdemeanor. Before Judge Krauss. City court of Brunswick. October 21, 1916.

J. T. *Colson,* for plaintiff in error.

*A. H. Crovatt, solicitor,* and *Bolling Whitfield,* contra.

HILL, J.   Manuel Silver, a non-resident and a citizen of the Republic of Portugal, was arraigned in the city court of Brunswick under an accusation charging him with a misdemeanor, in that "he did take or catch oysters, fish, shrimp, prawn, turtle, terrapin, and other crustaceans from the salt waters of said State of Georgia, for the purpose of selling the same." Before entering his plea of not guilty the defendant filed a demurrer to the accusation, on various grounds; which demurrer was overruled, and the defendant excepted pendente lite. The case was then tried (after a plea of not guilty had been filed) by the presiding judge, acting as court and jury, under an agreed statement of facts, which, in so far as material, will be stated herein. The court rendered a judgment finding the defendant guilty, and sentenced him to serve six months in the chain-gang, the sentence to be discharged upon the payment of a fine of $100 and costs. A motion for a new trial was overruled, and the defendant excepted.

1.  We will first consider the grounds of the demurrer. Without stopping to discuss the first and second grounds, which allege that the accusation charges no crime against the laws of the State, or the violation of any valid law, it is sufficient to say that these grounds are without merit. The third ground attacks as illegal and void the 9th section of the act on which the accusation is predicated (Acts 1915, Extraordinary Session, p. 71 et seq.), which provides that "if any person not a citizen of this State shall take or catch any oysters, fish, shrimp, prawn, turtle, terrapin, or other crustacean from the salt waters of this State, in any manner whatsoever, for the purpose of selling, he shall be guilty of a misdemeanor," on the ground that it seeks to make penal the "mere purpose" of a person, rather than the overt act of taking and catching shrimp, prawn, etc., when there is no inhibition or prohibition against catching or selling shrimp or prawn, etc. We do not think the section of the act under review is open to the criticism. The purpose of the act, as gathered from the caption and the act itself, is "the protection and propagation of fish, shrimp, prawn," etc., and "providing how the same may be taken and caught from the salt waters of this State." It does not, as contended, seek to make penal the "purpose" of a person who takes and catches the crus-

taceans enumerated in the act, but to protect them from certain persons who take and catch for the "purpose" of selling, etc. And the "purpose" may be gathered from the act of taking and selling.

2.   Section 9 of the act of 1915 is not void as being in violation of art. 1, sec. 4, par. 1, of the State constitution, which provides that "Laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law," for the reason that the rights of persons in this State, other than citizens of this State, are fixed by sections 2170 and 2173 of the Civil Code of 1910, which provide, respectively, that "Such citizens of the other States of this Union as are recognized as citizens of the United States by the Constitution thereof shall be entitled, while residents of this State, to all the rights of citizens thereof, except the elective franchise and the right to hold office, and to perform such civil functions as are confined by law to the citizens of this State," and "Aliens, the subjects of governments at peace with the United States and this State, so long as their governments remain at peace, shall be entitled to all the rights of citizens of other States resident in this State."   The present is not a local or special law for which provision has been made by a general law.   The act is territorially general in its operation, and applies wherever there are shrimp, prawn, etc., in the salt waters of the State.   "A statute relating to persons or things as a class is a general law."   *Gray* v. *McLendon,* 134 *Ga.* 224 (3), 241 (67 S. E. 859).

3.   Section 9 of the act is not in violation of art. 3, sec. 7, par. 17, of the constitution of the State, which provides that "No law or section of the Code shall be amended or repealed by mere reference to its title, or to the number of the section of the Code, but the amending or repealing act shall distinctly describe the law to be amended or repealed, as well as the alteration to be made."   The act of 1915 is not amendatory, and does not purport to be, of sections 2170 and 2173 of the Civil Code.   It is an original act, covering the full subject-matter with which it deals, and is not unconstitutional for any reason suggested.

4.   Section 9 of the act of 1915 referred to is not in violation of art. 3, sec. 7, par. 8, of the constitution of the State, which provides that "No law or ordinance shall pass which refers to

more than one subject-matter or contains matter different from what is expressed in the title thereof." The subject-matter of the act was the protection and propagation of shrimp, prawn, etc., and there is nothing in the section of the act attacked which contravenes the constitutional provision quoted. The court did not err in overruling each and every ground of the demurrer.

5. There are a number of grounds of the motion for a new trial, but they all revolve around two or three controlling questions, and they will accordingly be grouped together and discussed. It is insisted that there was no evidence that the defendant took and caught shrimp and prawn from the salt water of this State for the purpose of selling the same; but that on the contrary the evidence clearly disclosed that where shrimp and prawn were caught and taken by the defendant, they were the property of one J. B. Abrams, and that they were not caught and taken for the purpose of sale, but for the purpose of delivery to Abrams, he being a citizen of Georgia. From the agreed statement of facts it appears that "the taking and catching of said shrimp and prawn was done by said defendant, and the disposition of said catch was done by the said defendant under the following previous arrangement, namely: J. B. Abrams has been approximately for thirty years a citizen of said State, county and city, and continuously resident therein, and owns and operates in said State, county, and city an oyster and prawn and shrimp canning and packing plant; that in the operation thereof he owns and uses approximately twenty gasoline boats; that each boat carries a crew of three to four men; that the said boats leave the said plant of the said Abrams early in the morning of each day and go into the Atlantic Ocean along the Georgia coast, and within the jurisdiction limits of said State and county, and by the use of trawling nets take and catch shrimp and prawn from said waters; that the defendant was one of the crew of one of said boats; that said men and boats return daily to the premises and plant of the said Abrams, and then deliver the shrimp and prawn so caught to the said Abrams, to be canned and packed by him at said plant and then disposed of as the said Abrams may see fit; that the entire catch is delivered to the said Abrams exclusively, and to no other person or plant. The method of compensation or dealing between said fishermen, including this defendant, and the said

Abrams is: first, one third of the total catch of such shrimp and prawn is delivered to the said Abrams and is received by him to cover the expense of the maintenance, wear, repairs, etc., of said boats; second, the two thirds remaining shrimp and prawn so caught, taken, and brought in as aforesaid is weighed, and the said Abrams pays to the said crews of said boats (that is to said fishermen), including said defendant, the sum of one dollar and fifty cents for each hundred pounds of said shrimp and prawn, and the said fishermen have no further interest therein." If the above-recited facts do not establish catching and taking for the purpose of selling shrimp and prawn, then we are unable to perceive what constitutes taking and selling. There is no question that the shrimp and prawn are "taken and brought in," and that Abrams pays to the crews of the fishing boats (including the defendant) the sum of $1.50 for each 100 lbs. of the shrimp and prawn, "and the said fishermen have no further interest therein."

6. The fifth ground of the motion for a new trial complains that the judgment of the court finding Silver guilty is contrary to law, because the evidence showed that the defendant was a citizen of the Republic of Portugal, a country at peace with the United States and the State of Georgia; that for the past ten years the defendant has been continuously a resident of the United States, and for two years before the trial has been a resident of the State of Georgia and county of Glynn, and a taxpayer therein; that the laws of the State guarantee to the defendant, under such a state of facts, that he shall be entitled to "all the rights of citizens thereof, except the elective franchise and the right to hold office, and to perform such civil functions as are confined by law to citizens of this State." Civil Code, § 2170. It is insisted that the judgment is in violation of the treaty between the United States and the Republic of Portugal, which, it is agreed, is as follows, so far as material here: "There shall be, between the territories of the high contracting parties, a reciprocal liberty of commerce and navigation. The citizens and subjects of their respective States shall mutually have liberty to enter the ports, places, and rivers of the territory of each party, wherever foreign commerce is or shall be permitted. They shall be at liberty to sojourn and reside in all parts of said territory, in order to attend to their affairs, and they shall enjoy, to that effect, the same security and protec-

tion as natives of the country wherein they reside, on condition to their submitting to the laws and ordinances there prevailing, and particularly to the regulations in force concerning commerce. The citizens and subjects of each of the high contracting parties shall have power to dispose of their personal goods within the jurisdiction of the other, by testament, donation, or otherwise. If either party shall hereafter grant to any other nation any particular favor in navigation or commerce, it shall immediately become common to the other party, freely, where it is freely granted to the other nation, or on yielding the same compensation or an equivalent, quam proximæ, where the grant is conditional." Under the treaty between the United States and the Republic of Portugal, can this State prevent a citizen of Portugal temporarily residing in the State of Georgia, within the United States, from catching and taking from the salt waters of the State shrimp, prawn, etc., belonging exclusively to the State, for the purpose of selling them?

Under the agreed statement of facts we find nothing which would warrant us in holding that the judgment of conviction violated any provision of the treaty with Portugal, or, indeed, the portions of the State constitution said to be offended. In McCready v. Virginia, 94 U. S. (4 Otto), 391 (24 L. ed. 248), it was held: "1. Subject to the paramount right of navigation, the regulation of which in relation to foreign and interstate commerce has been granted to the United States, each State owns the beds of all tidewaters within its jurisdiction, and may appropriate them to be used by its citizens as a common for taking and cultivating fish, if navigation be not thereby obstructed. 2. The right which the citizens of the State thus acquire is a property right, and not a mere privilege or immunity of citizenship. 3. The second section of the fourth article of the Constitution, which declares that 'the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States,' does not vest the citizens of one State with any interest in the common property of the citizens of another State. 4. A law of Virginia, by which only such persons as are not citizens of that State are prohibited from planting oysters in the soil covered by her tide-waters, is neither a regulation of commerce nor a violation of any privilege or immunity of interstate citizenship." Chief Justice Waite, speaking for the

court in that case, said: "The principle has long been settled in this court, that each State owns the beds of all tide-waters within its jurisdiction, unless they have been granted away. Pollard's Lessee *v.* Hagan, 3 How. 212 [11 L. ed. 565]; Smith *v.* Maryland, 18 How. 74 [15 L. ed. 269]; Mumford *v.* Wardwell, 6 Wall. 436 [18 L. ed. 760]; Weber *v.* Harnor Commissioners, 18 Id. 66 [21 L. ed. 798]. In like manner, the States own the tide-waters themselves, and the fish in them, so far as they are capable of ownership while running. For this purpose the State represents the people, and the ownership is that of the people in their united sovereignty. Martin *v.* Waddell, 16 Pet. 410 [10 L. ed. 1013]." The above case was cited approvingly in Maxwell *v.* Dow, 176 U. S. 581, 596 (20 Sup. Ct. 448, 44 L. ed. 597). And to the same effect, see Corfield *v.* Coryell, 4 Wash. C. C. 371 (Fed. Cas. 3230); Cooley's Const. Lim. (7th ed.) 574; 10 Am. Dig. col. 2059, § 637.

But it is urged that the ninth section of the act of 1915 is in violation of the treaty between the United States and the Republic of Portugal, which provides that the citizens and subjects of the high contracting parties shall have power to dispose of their personal goods within the jurisdiction of the other country by testament, donation, or sale. The fallacy of this argument is in assuming that the shrimp and prawn taken by the defendant from the waters of the State, in violation of its statutes, are the personal goods of the defendant. They would not become his personal property until lawfully acquired. Under the principle decided in the McCready case, supra, they belonged to the State of Georgia, which had the right to protect its own supply of shrimp and prawn, and to authorize the manner in which its own citizens may take them. It would be strange if this were not so. Indeed, the State has laws the purpose of which is to protect game, fish, shrimp, prawn, etc., at certain seasons. She can give this protection as to all seasons—even as against her own citizens; and it would be strange if she could not do this also as to aliens without violating the treaty as outlined above. The State can protect her supply of prawn, etc., as against the citizens of other States of the United States, without offending the constitution. McCready *v.* Virginia, supra. And we see no reason why she can not do so as against aliens. There is no insistence that the shrimp and prawn were caught and taken outside the territorial limits of the State;

but on the contrary the allegation in the accusation is that they were taken "from the salt waters of said State of Georgia," and the agreed statement of facts shows that they were taken "within the jurisdiction limits of said State and county," and it likewise shows that they were sold within the State. The act in question does not deprive the defendant of any privilege or immunity guaranteed by the treaty or otherwise, which is not withheld from citizens of other States of the United States. From what has been said, and the authorities cited, we conclude that the court below did not err in overruling the demurrer and the motion for a new trial.                  *Judgment affirmed. All the Justices concur.*