## ANTON v. VAN WINKLE, Atty. Gen. of Oregon, et al.

(District Court, D. Oregon.　February 25, 1924.)

No. 8671.

1. **Constitutional law** ⬤⇒210, 252—**Resident alien within protection of constitutional provisions.**

An alien who is an inhabitant and resident of the United States is entitled to the protection of the provisions of the fourteenth constitutional amendment.

2. **Aliens** ⬤⇒4—**Generally alien has same right as citizen to engage in employment or occupation.**

Generally, and in the absence of restrictive or regulatory statute, an alien has the same right and privilege as a citizen under similar conditions to engage in useful, gainful employment and occupations.

3. **Licenses** ⬤⇒5—**Police power extends to regulation of business of conducting billiard and pool rooms.**

The business of conducting a billiard or pool hall may lawfully be classified as a nonuseful occupation and may be regulated or prohibited by a state in the exercise of its police power.

4. **Constitutional law** ⬤⇒230(3), 296(1)—**Licenses** ⬤⇒7(1)—**Statute prohibiting licensing of alien to conduct pool or billiard hall held valid.**

Laws Or. 1923, p. 232, prohibiting the issuance of a license to any person not a citizen of the United States to engage in the business of conducting a pool or billiard hall *held* within the police power of the state and not in violation of any constitutional right of aliens.

In Equity. Suit by Christ Anton against I. H. Van Winkle, Attorney General of the State of Oregon, and others. On motions by complainant for preliminary injunction and by defendants to dismiss bill. Injunction denied, and motion to dismiss granted.

Austin S. Hammond and Fred S. Bynon, both of North Bend, Or., for plaintiff.

I. H. Van Winkle, Atty. Gen., Willis S. Moore, Asst. Atty. Gen., and Ben S. Fisher, Dist. Atty., and J. T. Brand, City Atty., both of Marshfield, Or., for defendants.

WOLVERTON, District Judge. This is a suit on the part of a subject of the kingdom of Greece, who has declared his intention to become a naturalized citizen of this country, who is now, and has been for the past eleven years, a resident of the city of Marshfield, Coos county, Or., who heretofore has been engaged in the business of owning and operating a billiard and pool room and cigar store in said city, under city license, and who, having been refused a license by city authorities further to carry on such business, now seeks to have the prosecuting officers of the state and of the municipality restrained from arresting and prosecuting him on account of his engaging therein. The officers of the city justify their act in refusing plaintiff a license by reason of a statute of the state, which provides that:

"No county, city, town or municipality shall issue a license to any person not a citizen of the United States to engage in the pawnbroker's business, or in the business of conducting a pool or billiard hall, card room or dance hall."

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

And it is further declared that:

"Any person engaging in any such business in the state or Oregon who is not a citizen of the United States shall be deemed guilty of a misdemeanor," etc. Laws of Oregon, 1923, p. 232.

[1] The validity of the statute is arraigned as depriving plaintiff of his property without due process of law, and denying him the equal protection of the law, as guaranteed under the Fourteenth Amendment. The plaintiff, though an alien, being a resident and inhabitant of the country, is entitled to the protection vouchsafed by these guaranties. Yick Wo v. Hopkins, 118 U. S. 356, 369, 6 Sup. Ct. 1064, 30 L. Ed. 220.

[2] Plaintiff, along with citizens of the United States, has the right to work and so employ himself as to gain a livelihood. Primarily, he has the same right and privilege as citizens under similar conditions to engage in useful gainful employment and occupations, unless they pertain to the regulation or distribution of the public domain, or to the common property or resources of the people of the state, or the devolution of real property, or pertain to public works or benefits to be received from public moneys, as illustrated by the cases of McCready v. Virginia, 94 U. S. 391, 396, 24 L. Ed. 248; Patsone v. Pennsylvania, 232 U. S. 138, 145, 146, 34 Sup. Ct. 281, 58 L. Ed. 539; Hauenstein v. Lynham, 100 U. S. 483, 25 L. Ed. 628; Blythe v. Hinckley, 180 U. S. 333, 341, 342, 21 Sup. Ct. 390, 45 L. Ed. 557; Heim v. McCall, 239 U. S. 175, 36 Sup. Ct. 78, 60 L. Ed. 206, Ann. Cas. 1917B, 287; and perhaps to other similar regulations and relations. See Truax v. Raich, 239 U. S. 33, 39, 40, 36 Sup. Ct. 7, 60 L. Ed. 131, L. R. A. 1916D, 545, Ann. Cas. 1917B, 283.

A useful, legitimate business may be subject to regulation in pursuance of the police powers of the state, but it cannot be prohibited. Adams v. Tanner, 244 U. S. 590, 37 Sup. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973. But a business which is inherently vicious and harmful may be prohibited. Murphy v. California, 225 U. S. 623, 32 Sup. Ct. 697, 56 L. Ed. 1229, 41 L. R. A. (N. S.) 153.

[3] There is also a common classification as nonuseful occupations. These may be regulated or prohibited, according as local conditions and the manner in which they are conducted may characterize them as useful or vicious. Id.

[4] Now, the statute in question inhibits the plaintiff, who is an alien, from engaging in the business of conducting a pool or billiard hall—a plain discrimination against aliens, and in favor of citizens of the United States—and the crucial question is whether the state may so discriminate, in the exercise of its police powers, in the interest of the public weal. The keeping of a billiard or pool hall, while not a nuisance per se, is an occupation attended with a harmful tendency. This is incontrovertible, and it is said, in Murphy v. California, supra:

"Where, in the exercise of the police power, the municipal authorities determine that the keeping of such resorts should be prohibited, the courts cannot go behind their finding and inquire into local conditions."

So, in Booth v. Illinois, 184 U. S. 425, 429, 22 Sup. Ct. 425, 427 (46 L. Ed. 623) the court makes this enunciation of the law:

"A calling may not in itself be immoral, and yet the tendency of what is generally or ordinarily or often done in pursuing that calling may be towards that which is admittedly immoral or pernicious. If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the state thinks that certain admitted evils cannot be successfully reached unless that calling be actually prohibited, the courts cannot interfere, unless, looking through mere forms and at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law."

If, in the light of these authorities, the statute in question had been for a prohibition of the business of maintaining billiard or pool halls, considering the character of the occupation as having a harmful or noxious tendency, there could be no question of the power of the Legislature to ordain such prohibition under its police power. The Legislature possessing this power, is it authorized to prohibit aliens alone from maintaining such a business? This, of course, involves a legislative classification, in the adoption of which the Legislature is governed by the same principle which is controlling in the enactment of any statute for the protection of the public health, safety, morals, and welfare. We may therefore inquire, Is the classification without any real or substantial relation to the object to be subserved?

We can only judge of the legislative purpose from its declaration. The act is without preamble, and no reasons for its enactment are given. It may be judicially known, however, that aliens coming into this country are without the intimate knowledge of our laws, customs, and usages that our own people have. So it is likewise known that certain classes of aliens are of different psychology from our fellow countrymen. Furthermore, it is natural and reasonable to suppose that the foreign born, whose allegiance is first to their own country, and whose ideals of governmental environment and control have been engendered and formed under entirely different régimes and political systems, have not the same inspiration for the public weal, nor are they as well disposed toward the United States, as those who, by citizenship, are a part of the government itself. Further enlargement is unnecessary. I have said enough so that obviously it cannot be affirmed with absolute confidence that the Legislature was without plausible reason for making the classification, and therefore appropriate discrimination against aliens as it relates to the subject of legislation. Much less can it be said that the enactment of the law complained against is a clear, unmistakable infringement of plaintiff's constitutional rights. In support of this view, see State ex rel. Balli v. Carrel, 99 Ohio St. 285, 124 N. E. 129.

The motion to dismiss must be sustained, and likewise the application for a temporary injunction will be denied.