Argued March 18, reversed April 28, 1925.

# M. GEORGE et al. *v*. CITY OF PORTLAND et al.

(235 Pac. 681.)

**Constitutional Law—Due Process Clause Includes All Governmental Agencies Authorized by "State."**

1. Constitution of the United States, Amendment 14, Section 1, providing that no "state" shall deprive any person of life, liberty, or property without due process of law, nor deny any person within its jurisdiction equal protection of the laws, includes not only state itself but also all governmental agencies authorized by state, such as municipal corporations, like cities and towns.

**Constitutional Law—Statute and Ordinance Prohibiting Issuance of License to Sell Soft Drinks to Anyone not Citizen of United States Held Unconstitutional.**

2. Ordinance prohibiting issuance of a license to sell certain soft drinks to anyone not a citizen of United States, and Laws of 1923, page 232, Section 4, under authority of which such ordinance was passed, *held* violative of "due process" clause of Constitution of the United States, Amendment 14, Section 1, and state Constitution, Article I, Section 31, providing that resident white foreigners shall enjoy same rights in respect to property as native-born citizens, articles designated as soft drinks in ordinance being subjects of property.

---

See (1) Constitutional Law, 12 C. J. 1144, 1196. (2) Aliens, 2 C. J. 1046.

From Multnomah: George Tazwell, Judge.

In Banc.

Reversed.

For appellants there was a brief over the names of *Messrs. Kaste & Rand* and *Mr. Tyson Kinsell*, with an oral argument by *Mr. Irving Rand*.

For respondents there was a brief over the names of *Mr. Frank S. Grant*, City Attorney, and *Mr. R. A.*

---

1. Power of state under Fourteenth Amendment to the United States Constitution to deny to aliens the right to engage in a lawful occupation, note 11 L. R. A. (N. S.) 799. See, also, 1 R. C. L. 799; 6 R. C. L. 371, 373, 394.

*Imlay,* Deputy City Attorney, with an oral argument by *Mr. Grant.*

BURNETT, J.—The City of Portland enacted an ordinance concerning the soft-drink business. It defined the term "soft drink" to "mean and include any drink or beverage except tea, coffee, milk, cocoa, chocolate, and their direct substitutes." Aside from the five drinks mentioned and the substitute "soft drinks," it would include anything potable, from Scotch whisky to Bull Run water. The ordinance also defined the term "soft-drink business" to "mean and include the manufacturing, concoction, preparation, distribution, bottling, selling, keeping for sale, either at wholesale or retail, or the giving away or serving of any soft drink." Section 3 of the ordinance declares it to be unlawful for any person to engage in the City of Portland in the soft-drink business without securing a license therefor and paying the license fee provided for in the ordinance. After establishing the procedure in applying for licenses and for inquiring into the fitness of the applicant, considered with relation to his police or criminal record, Section 5 of the ordinance specifies that:

"No person shall be regarded as fit or qualified to receive a license to conduct a soft-drink business as defined in this ordinance who is not devoted to the government of the United States and to its laws, or who is incapable of understanding the laws of the United States and of the State of Oregon and the ordinances of the City of Portland, or who is not a citizen of the United States."

Section 6 contains the provision that:

"No license to engage in a soft drink business shall be issued to any person not a citizen of the United

States.   Any license issued to any person not a citizen of the United States to enage in a soft drink business shall be absolutely void.''

According to the complaint:

''Plaintiffs are each and all residents of defendant city, and have been and now are the owners of and engaged in conducting at their respective establishments, a substantial and profitable business, within the defendant city, and in their respective establishments they conduct stores, selling at retail cigars, tobacco, fruits, groceries, bread, vegetables, confections and the like; and they also maintain a soda fountain and dispense to their various customers soft drinks, to wit: Coco Cola, Root Beer, Ginger Ale, Malted Milk, Soda, Pop, and other concoctions of soft and harmless drinks at a profit.

''Plaintiffs are each and all residents of the City of Portland and the respective place of business of each plaintiff is within the said city.   Plaintiffs are not citizens of the United States, but they each intend, expect and hope to become a citizen of the United States.   They each have been and now are conducting a clean and wholesome establishment, and conform to each and every ordinance of the City of Portland, and are peaceable, law-abiding citizens of said city, at all times heretofore and now submitting themselves to the laws and ordinances here prevailing; and plaintiffs have each complied with each and every requirement necessary to obtain a license to dispense to their customers soft drinks at their respective places of business, (save and except their citizenship), and each has offered to, and hereby offers to pay to said city the necessary and required license fee such as is necessary and required of all persons to whom licenses are thereupon issued, and to whom licenses have heretofore been issued to conduct a similar business, to-wit: the sale of soft drinks.''

The plaintiffs aver in substance that solely because they are aliens their applications for licenses have

been denied by the city authorities and that unless restrained, the officers of the city will cause the plaintiffs to be arrested, fined and imprisoned for a violation of the provisions of said ordinance, in the selling, and offering for sale, at their respective places of business, the soft drinks mentioned in the complaint. The prayer is, in effect, that the defendant be enjoined from interfering with or arresting the plaintiffs for a violation of said ordinance, or for selling and dispensing "soft drinks" at their respective places of business without first having obtained a license; that the defendant city be compelled by *mandamus* to issue to the plaintiffs the proper licenses for the conduct of such businesses upon the same terms and conditions accorded to citizens of the United States.

Many conclusions of law are injected into the complaint, which it is not necessary here to notice, as the pleading is not attacked upon that ground. The facts averred in that pleading are not strongly contested. The city avows its authority to regulate such avocations and for sanction of its legislation denying licenses to aliens refers to Chapter 163 of the General Laws of Oregon for 1923, entitled:

"An act to prohibit the issuance of a license by any county, city, town or municipality to persons not citizens of the United States to engage in certain businesses, making it unlawful for persons not citizens of the United States to engage in certain businesses and providing a penalty therefor, and making it unlawful for any person to aid or abet any person not a citizen of the United States to evade the provisions hereof, and providing a penalty therefor." Approved, February 21, 1923.

The only section of that act here involved is Section 4:

"No city, town or municipality shall issue a license to any person not a citizen of the United States to engage in the business of conducting a soft-drink establishment."

1, 2. A demurrer to the answer was overruled and as the plaintiffs declined to plead further, the court rendered a decree dismissing the suit and the plaintiffs have appealed.

The principal contention of the plaintiffs is that the state and municipal legislation here involved violates the following clause of the first section of Article XIV of the national Constitution:

"nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

While the inhibition of the national organic act is directed against "any state," it includes not only the state itself, but also all the governmental agencies authorized by the state, such as municipal corporations like cities and towns.

There is a class of cases upholding the doctrine that where there is involved a mere privilege and not a right, it is not forbidden by the Fourteenth Amendment to exclude aliens from obtaining a license to exercise the privilege. A case relied upon for that doctrine is *Trageser* v. *Gray,* 73 Md. 250 (20 Atl. 905, 25 Am. St. Rep. 587, 9 L. R. A. 780). There the plaintiff, an unnaturalized German, applied to the proper authorities for a license to sell intoxicating liquors. Referring to spirituous liquor, the court said:

"No one can claim, as a right, the power to sell, either at any time or at any place or in any quantity."

The decision went upon the principle that intoxicating liquor had been practically outlawed, so that no one had any legal right to sell, but at best could only obtain from the government the privilege of doing what otherwise would be unlawful. *Anton* v. *Van Winkle* (D. C.), 297 Fed. 340, held that an alien might be denied the right to operate a billiard-hall on the doctrine that, as ordinarily conducted, the game of billiards and the places where it is played are conducive to idleness, dissolute habits and other reprehensible features. In *Commonwealth* v. *Hana,* 195 Mass. 262 (81 N. E. 149, 122 Am. St. Rep. 251, 11 Ann. Cas. 514, 11 L. R. A. (N. S.) 799), a pedler's license was refused to an alien because of the opportunities to swindle purchasers, and that it was a proper exercise of the police power to restrict licenses to those who were sufficiently attached to the principles of our government to become citizens under the naturalization laws  Holding that pawnbroking is a privilege and not a right, the court in *Asakura* v. *Seattle,* 122 Wash. 81 (210 Pac. 30), upheld the city in refusing to license an alien to engage in that business. Those precedents proceed largely upon the principle that the occupations involved have been practically placed under the ban of the law and in the domain of privilege only, so that, strictly speaking, no right belongs to anyone to engage in such occupation. In *White* v. *Holman,* 44 Or. 180 (74 Pac. 933, 1 Ann. Cas. 843), Mr. Justice MOORE, delivering judgment, said:

"Under a constitution like ours, any lawful business, the management of which might be injurious to the public, may be regulated so as to limit the place or to prescribe the manner in which it shall be conducted, provided that in doing so no privileges or immunities are granted to any individual or class of

persons that shall not equally belong to all citizens upon the same terms.''

At this juncture it is proper to consider the provision of our state Constitution, Section 31 of Article I of which reads in part as follows:

''White foreigners who are or may hereafter become residents of this state shall enjoy the same rights in respect to the possession, enjoyment, and descent of property as native-born citizens. * * ''

Except so far as the right of property in intoxicating liquor is interdicted by the provisions in the state and national Constitutions, all the articles designated as soft drinks in the definitions promulgated in the ordinance are subjects of property. Nonintoxicating beverages have not been outlawed thus far as in the case of spirituous liquors. The right to contract concerning them, to buy and sell them, to possess them and enjoy them are within the protection of our state Constitution.

''The right to make contracts is both a liberty and a property right, and is within the protection of the guaranties against the taking of liberty or property without due process of law. Neither the state nor federal governments, therefore, may impose any arbitrary or unreasonable restraint on the freedom of contract. This freedom, however, is not an absolute, but a qualified right, and is, therefore, subject to reasonable restraint in the interest of the public welfare.'' 12 C. J. 1200.

The function of the courts in setting bounds to that largely undefinable prerogative known as the police power is most aptly expressed by Mr. Justice HARLAN in *Mugler* v. *Kansas,* 123 U. S. 623, 661:

''The courts are not bound by mere forms, nor are they to be misled, by mere pretenses. They are at

liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution.''

There is no doubt but that, within reasonable limits in the exercise of the police power, the state, or its duly authorized subordinate governmental agencies, may regulate any business that is or may be operated in a manner hurtful to the general peace and good order of the community, and may make reasonable classifications of the persons permitted to engage in such occupations. Taking, however, the equal protection feature of the Fourteenth Amendment to the national Constitution and the terms of Section 31 of Article I of our own state Constitution, respecting the privileges of white foreigners who reside here, it is plain that in respect to persons proposing to engage in an otherwise lawful occupation, a distinction based solely on whether the applicant is or is not an alien, is not permitted in this state.

As to the matters involved in this litigation, aliens are entitled in Oregon to the same treatment accorded to native-born citizens. Under the facts, as practically admitted by the pleadings, the plaintiffs should have the relief demanded in the complaint. In other words, they of right may apply for licenses to engage in the business of selling soft drinks in Portland on the same basis that a native American may apply. The decree of the Circuit Court is reversed.

Reversed.

Mr. Justice RAND took no part in the hearing or the decision of this case.

BROWN, J., Dissenting.—The legislation herein involved having been enacted for the express purpose of furthering the enforcement of laws denouncing traffic in alcoholic liquors, I am of opinion that such legislation is clearly within the compass of the police power of the state and does not offend against the Fourteenth Amendment to the Constitution of the United States.

Neither is the legislation assailed by plaintiffs contrary to the provisions of Section 31, Article I, Oregon Constitution. A license to sell soft drinks is a mere privilege or permission. Such license is not a contract, nor is it property, within the meaning of the constitutional provision last alluded to.

For the foregoing reasons, this case should be affirmed.