Argued September 9, 1947; affirmed September 23, 1947

STATE ex rel. QUISOR v. ELLIS et al.

(184 P. (2d) 860)

In Banc.

*Cecil H. Quesseth,* Assistant Attorney General, of Salem (George Neuner, Attorney General of Oregon, on brief), for appellants.

*Leo Levenson,* of Portland (Goodman & Levenson and Samuel Jacobson, all of Portland, on brief), for respondent.

KELLY, J.

This is an appeal from a judgment holding in effect that the provisions in Subdivision 7 of Section 49-303, Vol. 4, O. C. L. A., page 901, in restricting to citizens of the United States only the right to receive certificates of registration to practice barbering, controvenes the Fourteenth Amendment to the United States Constitution.

The question to be decided is presented in a proceeding in mandamus instituted in the circuit court of

Multnomah County by the relator to secure an order commanding the State Board of Examiners to issue to him, the said relator, a certificate and license authorizing him to exercise the rights and privileges of an apprentice barber in the state of Oregon.

Upon the filing of the said Sammy Q. Quisor's petition, wherein he is designated as plaintiff, an alternative writ of mandamus was issued from said circuit court, the charging part of which is as follows:

"Whereas, it appears to the above entitled Court from the verified Petition of Sammy Q. Quisor, as relator herein:

I.

Plaintiff is a native of the Philippine Islands, lawfully admitted into the United States of America, and at all times herein mentioned, and for a long period of time prior thereto, has been and now is an actual and bona fide resident and inhabitant of the City of Portland, County of Multnomah, State of Oregon; that plaintiff has in good faith declared his intention of becoming and expects to become a citizen of the United States based upon his application for citizenship now pending before the Immigration & Naturalization Service of the United States.

II.

Plaintiff has been honorably discharged from the military service of the United States of America, and, by reason thereof, became and now is entitled to certain rights, privileges and benefits granted to honorably discharged veterans under the laws of the State of Oregon and of the United States, including the right to educational benefits; That plaintiff made application to the Veterans Administration for vocational training as a barber and, upon receiving its approval, immediately applied for and successfully passed an examination to de-

termine his educational fitness provided for applicants intending to enter a barber school and complied with all other requirements of the State Board of Barber Examiners and, thereafter, was duly admitted to and received a course of instruction in and graduated from a barber school duly approved by said Oregon State Board of Examiners and paid for by the Veterans Administration of the United States.

### III.

Thereafter plaintiff made application to said Board for examination to determine his qualifications to receive a certificate of registration to practice as a registered apprentice, paying the required fee and complying with all requirements pertaining thereto; and with the approval of said Board, took the examination prescribed by said Board and successfully passed the same on or about April 1, 1946.

### IV.

Plaintiff thereupon demanded that said Board issue to him a certificate of registration as a registered apprentice and a license authorizing him to any and all acts constituting the practice of barbering under the immediate supervision of a registered barber and as a licensed apprentice in order that he might be able to continue his instruction and training to acquire the necessary qualifications to obtain a certificate of registration and license to practice barbering; but notwithstanding said demand the defendants refused and still continue to refuse to issue a certificate and license for the reason hereinafter stated; Plaintiff is thereby prevented from continuing his instruction and training in barbering and from carrying on as an apprentice barber under appropriate supervision, in order to become a barber, because of the construction that the defendants herein have placed upon the laws of the State of Oregon, hereinafter referred to, without being liable to arrest, criminal prosecution and imprisonment; that by reason thereof he is

unable to continue to receive the educational benefits for his vocational training from the Veterans Administration.

### V.

Plaintiff further represents that he is fully qualified to receive a certificate of registration and license as a registered and licensed apprentice in that he has an education equivalent to the 8th grade of grammer school as determined by an examination conducted by the Board, as aforesaid; in that he is over the age of 16-½ years; in that he is a person of good moral character and temperate habits; in that he has been graduated from a school of barbering approved by the Board; in that he has passed the qualifying examination conducted by the Board to determine his fitness to practice as a registered apprentice; in that he can produce a certificate from a registered physician certifying that he is free from contagious or infectious disease, and has complied with all requirements necessary to obtain said registration and license to practice barbering as an apprentice, save and except as to citizenship.

### VI.

The defendants, Guy Ellis, Clarence Townsend and T. C. Gilpin, at and during all times herein mentioned, comprised and constituted and now comprise and constitute the State Board of Barber Examiners of the State of Oregon, each duly appointed, qualified and acting as such; said defendants refused and still refuse to issue and grant a certificate and an apprentice license to plaintiff for the reason and upon the ground that, under and pursuant to the provisions of Chapter 365 of the General Laws of Oregon for 1927, and Chapter 177 of the General Laws of Oregon for 1935, compiled as Title 49 in Oregon Compiled Laws Annotated, plaintiff cannot be registered as an apprentice barber and issued a license to practice barbering as an apprentice barber, for the sole reason that

plaintiff is an alien and not a citizen of the United States, and that under the provisions of paragraph 3 of Chapter 177 of the General Laws of Oregon for 1915, only citizens of the United States can be registered and licensed as an apprentice barber; that by reason thereof plaintiff is amenable to the penalties provided for the violation of the provisions thereof should he engage in barbering as an apprentice and not a citizen of the United States.

## VII.

Plaintiff alleges that the provisions of Title 49, Oregon Compiled Laws Annotated, which provide that no person shall be issued a certificate of registration as a barber or as an apprentice barber and no license for carrying on the trade of barbering, as an apprentice or otherwise, shall be issued to any person unless he is a citizen of the United States, are illegal and null and void in that:

(a) the same is within the inhibitions of subdivision 31 of Article I of the Constitution of the State of Oregon;

(b) the same is within the inhibitions of the Fourteenth Amendment to the Constitution of the United States;

(c) the same are arbitrary, unreasonable and oppressive, and the classification and distinction between citizens and aliens is unreasonable and arbitrary and deprives plaintiff, and others similarly situated before the law, the right to follow his chosen avocation and is destructive of the fundamental and natural rights of the Plaintiff under the constitutional provisions theretofore mentioned; and

(d) the same are so unreasonable, arbitrary and oppressive in their application upon the plaintiff and other persons affected that they are not within the proper exercise of the police powers of the State in its efforts

to regulate a business for the health and welfare of the people of this state.

## VIII.

Plaintiff further alleges that there is no plain, speedy and adequate remedy at law whereby his rights can be upheld, or whereby said Board and its members can be compelled to issue a certificate and license as requested by said plaintiff.''

To this alternative writ, defendants interposed a demurrer on the grounds that the said writ does not state facts sufficient to constitute a cause of action.

The trial court, after hearing the oral arguments of counsel and considering the briefs submitted by them, overruled defendants' demurrer. Defendants refused to plead further and elected to stand on the issues raised by the demurrer whereupon the trial court made and entered an order for a peremptory writ of mandamus in accordance with the prayer of relator's petition.

While the trial judge referred to Section 31 of Article I of the Constitution of the State of Oregon as inhibiting the enactment of a statute requiring citizenship upon the part of an applicant for permit to carry on the trade of barbering, the principal contention of the relator on this appeal is that this case must be decided on the basis of the Fourteenth Amendment to the United States Constitution, the final provision of which is to the effect that no state shall deny to any person within its jurisdiction to equal protection of the laws.

Section 31 of Article I of the Constitution of Oregon has not been expressly amended since its adoption by the electors of the territory on November 9, 1857. This section, as it now appears, had its place in the constitu-

tion which was approved February 14, 1859, by the act admitting Oregon into the Union.

The Fourteenth Amendment to the Constitution of the United States was proposed by Congress on June 16, 1866, and declared ratified on July 28, 1868. It will be noted that by its terms the equal protection of the law accorded to aliens is not restricted to white foreigners, but extends to all persons within the jurisdiction of the state which obviously includes the relator.

We are not without judicial and legislative guidance in considering the question here presented which when resolved to its simplest form is, whether the state in the exercise of its police power has the right to restrict the right to conduct the business, trade or profession of barbering to those only who are citizens of the United States.

In April, 1925, this court, speaking through the late Mr. Justice Burnett, announced:

"There is no doubt but that, within reasonable limits in the exercise of the police power, the state, or its duly authorized governmental agencies, may regulate any business that is or may be operated in a manner hurtful to the general peace and good order of the community, and make reasonable classifications of the persons permitted to engage in such occupations. Taking, however, the equal protection feature of the Fourteenth Amendment to the national Constitution and the terms of Section 31 of Article I of our own state Constitution respecting the privileges of white foreigners who reside here, it is plain that in respect to persons proposing to engage in an otherwise lawful occupation, a distinction based solely on whether the applicant is or is not an alien, is not permitted in this state." *George, et al v. City of Portland, et al,* 114 Or. 418, 425, 235 P. 681, 39 A. L. R. 341.

In 1902, the supreme court of Michigan decided that to hold that one is not entitled to practice the calling of a barber

"because not a full citizen of the United States, is to deny to him rights which we think are preserved by the fourteenth amendment." *Templar v. State Board of Examiners*, 131 Mich. 254, 90 N. W. 1058, 100 Am. St. Rep. 610.

We venture to quote the latest expression of the Legislative Assembly of Oregon as to the public policy of this state in respect to the question here considered:

"It is hereby declared to be the public policy of this state to encourage the employment of all persons in accordance with their fullest capacities, regardless of their race, color, religion, sex, union membership, natural origin or ancestry, and to safeguard their right to obtain and hold employment without discrimination." Oregon Laws 1947, chap. 508, section 1, p. 881.

As stated, defendants seek to draw the color line in discussing Section 31 of Article I of our state constitution and in their brief under the heading "Points and Authorities" in support of their assignment of error No. 1, defendants call attention to the fact that in the cases in which this court has held that section to be applicable, the parties concerned were white foreigners. Since the adoption of the Fourteenth Amendment to the federal constitution, the principle involved here needs no other support. That principle is plainly declared in language susceptible of but one meaning, viz:

"No state shall * * * * deny to any person within its jurisdiction the equal protection of the laws."

Defendants in their brief refer to the "privileges and immunities clause" of the Fourteenth Amendment. That clause is not applicable to the record in this case. Relator claims a right to work as a barber under the "equal protection clause".

We quote from the opinion dealing with the equal protection clause rendered by the Supreme Court of the United States in *Truax v. Raich,* 239 U. S. 33, 36 Sup. Ct. Rep. 9, 60 L. Ed. 131, L. R. A. 1916D 545, Ann. Cas. 1917B, 283, as follows:

"Upon the allegations of the bill, it must be assumed that the complainant, a native of Austria, has been admitted to the United States under the Federal Law. He was thus admitted with the privilege of entering and abiding in the United States, and hence of entering and abiding in any state in the Union. * * * * Being lawfully an inhabitant of Arizona, the complainant is entitled under the 14th Amendment to the equal protection of its laws. The description, 'any person within its jurisdiction', as it has been frequently been held, includes aliens. 'These provisions', said the court in Yick Wo. v. Hopkins, 118 U. S. 356, 369, 20 L. ed. 220 226, 6 Sup. Ct. Rep. 1064 (referring to the due process and equal protection clauses of the Amendment) 'are universal in their application to all persons to any differences of race, of color or of nationality; and the equal protection of the laws is a pledge of the protection of equal laws.' See also Wong Wing v. United States, 163 U. S. 228, 242, 41 L. ed. 140, 145, 16 Sup. Ct. Rep. 977; United States v. Wong Kim Ark, 169 U. S. 649, 695, 42 L. ed. 890, 907, 18 Sup. Ct. Rep. 456."

In a comparatively recent case, the Supreme Court of the United States, speaking through the late Mr. Chief Justice Stone, declared:

"Equal protection of the laws is something more than an abstract right. It is a command which the

state must respect, the benefits of which every person may demand." *Hill v. State of Texas,* 316 U. S. 400, 62 Sup. Ct. Rep. 1156, 86 L. Ed. 1159.

We also quote from a statement of this court, speaking through Mr. Justice Rand:

"It is admitted to be a fact that the plaintiff is an alien friend lawfully residing in this state, and that, but for his alienage, he has all the qualifications requisite to entitle him to the license applied for. Although an alien and having no political rights except those expressly conferred by statute, he is entitled to the benefit of the provision of the federal Constitution that no state shall deprive him of life, liberty or property without due process of law, *nor deny to him the equal protection of the laws.*" (Italics supplied.) *Alsos v. Kendall,* 111 Or. 359, 367, 227 P. 286.

Notwithstanding the foregoing references to aliens and to the courts' holding that aliens are entitled to the benefit of the provision of the Fourteenth Amendment declaring that no state may deny to an alien the equal protection of the laws, we are not unmindful that the Supreme Court of the United States has held that the citizens of the Philippine Islands are not aliens. *Toyota v. United States,* 268 U. S. 402, 45 Sup. Ct. Rep. 563, 69 L. Ed. 1016; see also *Gonzales v. Williams,* 192 U. S. 1, 24 Sup. Ct. Rep. 177, 48 L. Ed. 317; *The Diamond Rings,* 183 U. S. 176, 22 Sup. Ct. Rep. 59, 46 L. Ed. 138.

The effect of the recent recognition by the United States of the independence of the Philippines doubtless is such as to modify the holding in the Toyota case.

Fairness to defendants and the courtesy due to their counsel require a reference to the authorities cited in defendants' brief.

Defendants cite *Anton v. VanWinkle,* 297 Fed. 340; *State ex rel Balli v. Carrel,* 99 Ohio St. 285, 124 N. E.

129, and *State of Ohio, ex rel Clarke v. Deckebach,* 274 U. S. 392, 47 Sup. Ct. Rep. 630, 71 L. Ed. 1115. Each of these is a case wherein a license to operate a pool or billiard hall or table was denied to an applicant because of his alienage. The distinction between those cases and the case at bar is that the operation of public billiard and pool rooms is attended by harmful and vicious tendencies; while the conduct of a barber shop is not so burdened.

Defendants also cite *Wright v. May,* 127 Minn. 150, 149 N. W. 9, 10 L. R. A. 1915B, 151, which is a case where an alien was denied a license to act as an auctioneer. The distinction between that case and the instant case lies in the relation that an auctioneer sustains to the purchasers after the sales are completed, namely that of an agent of such purchasers. We quote from the opinion of the supreme court of Minnesota in that case:

"The auctioneer does not sell his own goods; he acts in making a sale at auction, primarily as the agent of the seller; when the property is struck off he becomes also the agent of the purchaser, at least to the extent of binding him by his memorandum of sale. 4 Cyc. 1041. He is liable to the seller for a loss due to his negligence or to his deviating from instructions, as well for money paid him by purchasers. He is liable to a purchaser under certain circumstances. We can see good ground for refusing a license to a resident of another state in the difficulty that might be encountered in compelling him or his bondsmen to respond in case he rendered himself liable either to seller or purchaser." *Wright v. May,* supra.

Defendants also cite *Commonwealth v. Hana,* 195 Mass. 262, 81 N. E. 149, 11 L. R. A. (N.S.) 799, wherein it was held that a state in the exercise of its police power

may restrict the granting of peddler's licenses to citizens and to those who have declared their intention to become such. In the case at bar, it is admitted that the relator has declared his intention to become a citizen. Moreover, the reason given in support of the court's holding in the Hana case distinguishes it from the instant case.

We quote from the opinion:

"The business of peddling furnishes such opportunities for the practice of fraud that it is a proper subject for legislative regulation. That such regulation has been practiced from early times, both in Europe and America, is shown at length by Mr. Justice Gray in Emert v. Missouri, 156 U. S. 296, 39 L. ed. 430, 15 Supt. Ct. Rep. 367." *Commonwealth v. Hana,* supra.

The distinction between the case at bar and the case of *Sashihara v. State Board of Pharmacy,* 7 Cal. App. (2) 563, 46 P. (2d) 804, is plainly stated in the opinion of the California Court of Appeals, speaking through Mr. Justice Crail thus:

"We are satisfied also that the subject sought to be accomplished by the legislation in question is the protection of the public health, safety, and general welfare, and that there is a reasonable relation between that object and the means adopted. This court cannot say that the classification excluding aliens is 'palpably arbitrary'. In the practice of pharmacy, chemicals and poisons are constantly used and compounded. If not handled with great caution, much harm might be inflicted." *Sashihara v. State Board of Pharmacy,* supra.

*State v. Stevens,* 78 N. H. 268, 99 A. 723, cited by defendants, is a case wherein the New Hampshire supreme court held that a provision of the laws of New

Hampshire, 1915 c. 128, that lightning rod agents shall be residents of the state, is not a violation of the federal constitution. We quote from the opinion in that case as follows:

"* * * no reason is perceived why the Legislature convinced by scientific investigation or the general sense of the community that lightning rods were more dangerous than useful, might not wholly prohibit their sale. There can be no natural inalienable right to sell lightning rods any more than there is to sell liquor; consequently there can be no natural right to sell as agent." *State v. Stevens,* supra.

*Alsos v. Kendall,* 111 Or. 359, 227 P. 296, and *Silver v. State,* 147 Ga. 162, 93 S. E. 145, cited by defendants, deal with the relationship sustained by the state to fish and other seafood in the waters of the state. It is there held that such property is owned by the state and that the state had the right to protect its own supply and to authorize the manner in which its own citizens may partake thereof.

The reasons underlying the decisions cited by defendants, as above stated, have no relevancy to the question whether an alien, who is within the jurisdiction of this state and in all respects qualified, should be deprived of the right to conduct the business of operating a barber shop.

We are not unmindful that defendants also cited *Liimatainen v. State Industrial Accident Commission,* 118 Or. 260, 246 P. 741, which denied the right of appeal from an adverse decision, because the claimant, a widow, was not and never had been a resident of Oregon, and the statute by its terms restricts an appeal in such counties to the circuit court for the county in which claimant resides. We do not deem that case to

be controlling here. There is no constitutional mandate, either state or federal, requiring the right of appeal from any court or other judicial body to be given to aliens who are not within the jurisdiction of the United States.

*People v. Crane,* 214 N. Y. 54, 108 N. E. 457, L. R. A. 1916D 550, 557, upholds the right to restrict employment upon public works to citizens only on the ground that such works constitute property owned by the citizens.

We are not unmindful that subsequent to the rendition by the Michigan court of the opinion in the case of *Templar v. State Board of Examiners,* supra, the legislature of New Mexico and Wisconsin, (see New Mexico Laws 1937, Chap. 220, Sec. 4, subdiv. 1, p. 578 and Wisconsin Stat. 1937, Chap. 158, Sec. 158.11, subdiv. d, p. 174) as well as the legislature of Oregon, enacted statutes declaring citizenship to be an essential requisite to eligibility for a license to practice barbering; but we find no judicial sanction of such legislation.

We are impressed by the reasoning of the Michigan court, the expression of the Supreme Court of the United States as to the mandatory character of the Fourteenth Amendment to the Constitution of the United States, and the formal expression of the Oregon Legislature at its last session, as above quoted.

The Michigan case is, so far as we are advised, the only one in which the question here presented has been decided by a court of last resort. In the opinion in that case the court said, among other things:

"*All persons* are entitled to enjoy the equal protection of the law, and while it may be competent for the legislature, in the exercise of its police

powers, to provide for an examination and licensing of barbers, as was held in State v. Zeno, 79 Minn. 80, 81 N. W. 748, 48 L. R. A. 88, 79 AM. St. Rep. 422, and Ex parte Lucas, 160 Mo. 218, 61 S. W. 218, would it be contended that the legislature might provide that only white persons should be licensed?''

Answering the argument of the attorney general that restrictive legislation may be enacted under the police power of the state without offending against the equal protection clause of the Fourteenth Amendment, ''if all persons brought under its influence are treated alike, under the same conditions and circumstances'', the court said:

 ''We discover nothing faulty in this statement of the rule. But the difficulty with this enactment is that all persons brought under the influence of this legislation are not treated alike, under the same conditions and circumstances. Before the enactment of this statute the relator had the undoubted right to ply his trade in Michigan. In the exercise of the police power, the legislature had the undoubted right to require, as a prerequisite to his plying his trade, that he submit to an examination. But had it the right to require citizenship? If it had the right to couple that with *other* requirements, it would have the same right to make that the *only* requirement. In other words, it would have the right to exclude alien labor wholly. We think the cases cited demonstrate that it had not this power.''

The court then called attention to the distinction between the law before it and statutes which include citizenship among requirements for admission to the Bar, saying that a statute of the latter kind ''confers upon the applicant who is admitted to the profession an office. He becomes an officer of the court.'' After noting the reasons to which we have already alluded for

a different rule when the legislation concerns the liquor business, the court concluded:

"But in the present case the relator's business is in no way injurious to the morals, the health, or even the convenience of the community, provided only he has the requisite knowledge upon the subjects prescribed by the legislature to practice his calling without endangering the health of his patrons. To hold that he is not entitled to practice this calling because not a full citizen of the United States is to deny to him rights which we think are preserved by the fourteenth amendment." *Templar v. State Board of Examiners,* supra.

With the foregoing reasoning we are in full accord.

THE JUDGMENT OF THE CIRCUIT COURT IS AFFIRMED.